WeldoN, J.,
delivered the opinion of the court:
This proceeding is based on certain contracts entered into by the claimants and defendants in March, April, May, and August, 1891 — the first on the 4th of March, the second on the 17th of April, the third on the 25th of May, and the fourth in August.
The contracts are in writing, except the last one, which is verbal. There is also a claim alleged in the eleventh paragraph of the petition, the substance of which is that the claimants sold to the firm of P. H. McLaughlin & Co., in June, 1891, cement amounting in value to the sum of $1,204.28, for the purpose of being used by them in the construction of the Naval Observatory under a contract with the defendants; that the firm had not paid for the cement; that before the use of the same by them they became insolvent and were declared by the defendants “failing contractors;” and that thereupon the defendants took possession of the cement, used the same with the knowledge that it had not been paid for, although the claimants demanded such cement. There are also claims for material used by defendants belonging to claimants while they were engaged in the work embraced in the contracts alleged in the petition.
*463 The first contract relates to a “ drill ball” at Fort Myer, wbicb is Exhibit A to the petition. Under that contract it is alleged that at the instance and request of the officers of defendants the claimants performed extra work amounting to the sum of $277. The second agreement, Exhibit B, relates to the building of an animal house in the Zoological Park at Washington. It is alleged that out of the compensation to be paid claimants for that building the defendants improperly deducted the sum of $450; and that in the performance of the contract they did extra work to the amount of $429, at the request and by the acquiescence of the officers of the defendants.
The third contract, dated May 25,1891, Exhibit G, relates to officers’ quarters at Fort Myer, and in connection with that contract it is alleged that in payment for the work the defendants improperly deducted the sum of $1,100; and it is further alleged that in the execution of said contract the claimants, at the instance and request of the defendants, performed extra work to the amount of $575.
It is alleged that in the performance of Contracts B and O in consequence of the incompetency and unskillfulness of the agents of the defendants in charge of the work, and unreasonable exactions on their part, the claimants were hindered and delayed in the execution of the work; but the findings do not show that the claimants were hindered and delayed as alleged, so that claim is, upon a question of fact, eliminated from .this controversy.
It is also alleged that the claimants, at the instance of the defendants, erected a flagstaff at Fort Myer, which was accepted and used by the defendants, and that the same was worth the sum of $131.
It is further alleged that in December, 1891, at the special instance and request of defendants, the petioners furnished them with 60 pouuds of sheet lead, worth the sum of $85.28; and also furnished defendants extra material not specified or required by said contracts.
The defendants deny that the alleged work upon the different contracts is extra; but that the same comes within the specifications of the agreement. They admit the retention of the sum of $450 under Contract B, but insist that it was properly retained because of the failure and delinquency of claimants; they also admit the retention of the sum of $1,100 under Contract O, but maintain that such retentioii was justified because *464 of tbe failure of the claimants to perform the work within the time agreed upon by an extension of the time limited in the agreement.
It is insisted by the defendants that the proper authority of the defendants did not order the extra work, if any was done; that no agreement in writing was made between the claimants and any officer or agent of the defendants for the performance of any extra or additional work, or for supplying any extra or additional material in and about the construction of the buildings specified in the agreements.
In this connection it is not necessary to refer in detail to the findings on the question of the right of the claimants to recover for extra labor, because of the provisions of the contracts relating to the requirements of an agreement in writing and the direction and sanction of the officer having the superior power of directing the execution and completion of work. The items for which we allow in the conclusion of law and judgment were at the request or requirement of the officers or agents in the immediate direction of the work, and some of them by the sanction of the superior power, under circumstances indicating the good faith of the subordinates. The additions were necessary, as it was thought by those agents; the Government has received the value and benefit of them, which combination of circumstances brings the claim for extras within the spirit if not wholly within the letter of the case of Ford (17 C. 01s. E., 60).
In the third finding is shown the performance of work which is alleged by the claimants as extra, and beyond the terms of the specifications in Contract A. Item 1 is for a change of plan which involved extra labor upon the part of claimants amounting to the sum of $92. The next item is granolithic pavement at south entrance. As to item 3, we think, on the facts, that it should be disallowed. In the fifth finding are the charges for extra work, Exhibit 13, relating to the animal house at the Zoological Park. The first item is for truss at east end of the building. There was no agreement that this was extra, but it was necessary in order to complete the work on that' part of the building. Other items are disposed of in the conclusion of law. As to some of the items claimed as extra, the proof is not sufficient to establish the fact of the work being done as alleged, or the appropriation of the material by the defendants.
*465 The eighth finding has reference to the claim for extra work and materials under Contract C for building the officers’ quarters.
The findings show in detail what was done by claimants and the value of each item, and as the conclusion of law indicates what items are allowed and what rejected it is not necessary to discuss them in detail.
The findings do not show how much, if any, damages resulted to the defendant's in consequence of the failure of the claimants to finish the building at the Zoological Park within the time specified iu the agreement; and if we construe the provision of the contract as a deduction of a penalty and not as a measure of injury or compensation, then the claimants are entitled to recover in this proceeding on that portion of the claim.
The clause of the contract is as follows: “In case of neglect or failure of the said parties of the first part to complete the above-mentioned house agreebly to and in conformity with the specifications and plans and the terms of this contract, on or before the date specified for the completion thereof, there shall be deducted the sum of $25 j>er day from the amount thereunder, in the discretion of the Secretary of the Smithsonian Institution, for each and every day that the completion and erection of said house, as agreed, may be delayed beyond the time specified in this contract.”
The deduction of the sum from the pay of claimants was not based upon an allegation of actual damages, but in pursuance of the alleged right to enforce the forfeiture because of the failure; and it does not appear what damage, if any, resulted to the defendants in consequence of the failure to complete the work within the time specified in the agreement.
The exaction of the $25 per day by the defendants at the time of the payment was improper if it was by way of penalty, and as it does not appear that any assessment as to damages was made or that the deduction was based upon the theory of actual damage, it must be held that it was the enforcement of a penalty or forfeiture.
If by the terms of the contract, as expressive of the understanding of the parties, it was intended as liquidated damages, then the deduction was proper and the claimants are not *466 entitled to recover on that item of the claim. As was said in the Kennedy Case (24 C. Cls. R., 142):
“The question whether a nominated sum is to be regarded as a mere penalty or liquidated damages is often a question of difficult solution, and courts are inclined to hold it as a mere penalty so as to permit the parties to prosecute and defend upon the broad equities of their rights. It is not necessary to enlarge in this connection by the citation and examination of many decisions. The case which we regard as the most complete authority on this question is the case of Vm Burén v. Biggs (11 How., 301). In passing on the question presented by this record the court say: ‘ The term forfeiture imports a penalty; it lias not necessary or natural connection with the measure or degree of injury which may result from a breach of the contract or from an imperfect performance. It implies an absolute infliction, regardless of the nature and extent of the causes by which it is superinduced. Unless, therefore, it shall have been expressly adopted and declared by the parties to be a measure of injury or compensation, it is never taken as such by the courts of justice, who leave it to be enforced, where this can be done, in its real character, viz, that- of a penalty. In a defense like that attempted by the defendants in a circuit court, upon the essential justness and fairness of the acts of the parties, a positive immutable penalty could hardly be applied as a fair test of their merits.’”
This court in the case of Davis (17 C. Cls. B., 201) has in substance held that “in determining whether an amount named in a contract shall be taken as penalty or as liquidated damages, courts are influenced largely by the reasonableness of the transaction and are not restrained by the form of the agreement, nor by the terms used by the parties, nor even by their manifest intent, which will be carried out so far only as it is right and reasonable.”
As the findings do not show how much, if any, damage the defendants suffered in consequence of the delay of the claimants to finish the building, and construing the provision of the contract as-a penalty and not agreed and liquidated damages, the claimants are entitled to recover the sum of $250, that being the amount deducted by the defendants.
As to the deduction of $200 for the failure to put in a Bickle-haupt skylight, as required by the contract, the findings show that the claimant put in a skylight, but not of the description of the Bicklehaupt. Some parts of the Bicklehaupt were used, but not as a whole. It does not appear that the defendants objected in such a manner as to induce claimants to believe that the skylight would be rejected, because it differed as a *467 whole from the Bicklehaupt pattern. The cost of the Bickle-liaupt was ■$250; the cost of the one used by claimants was one-half of that amount, so that the deduction should have been $125 instead of $200, and on that item of the claims the petitioners are entitled to recover the sum of $75.
The allegation is, and the findings show, that the defendants deducted the sum of $1,100 from the consideration of the contract marked “G,” which relates to the building of officers’ quarters at Fort Myer.
The clause of the contract on which they base their action is the seventh, which in substance provides that “in case of a failure of the claimants to comply with the stipulations of the agreement, the defendants shall have the right to procure materials and labor and perform the work at the cost of the claimants, to be deducted from the contract price.” and upon the further fact that the time for completion was extended at the instance and request of the claimants, with an agreement that if the house was not completed within the extended time the claimants should pay the defendants the sum of $50 per day, and that the time of the completion of the work went beyond the extended period time sufficient to amount to the sum deducted, reckoning each day at the rate of $50 per day.
to the officers’ quarters differs from the contract in relation to the animal house in this, that there is no exact penalty in the contract as to officers’ quarters; but simply, that upon a failure to complete within the time the defendants may exercise the right to complete the work at the cost of the claimants, the amount of such cost to be deducted from the contract price. The findings show that there were three failures upon the part of the petitioners to complete the work within the time limited by the original agreement and subsequent extensions. Before the expiration of the second limitation, to wit, the 20th of November, 1891, the officer in charge notified the claimants of the great desire on the part of the defendants to get possession of the buildings, prompted by their necessities, and on the 25th of November wrote claimants, as is shown by the letter of that date, that on the 30th he would exercise the power and right of the Government to take possession of the work and complete the same at the cost of the petitioners.
had already occurred, and the result was that the buildings, which were to be erected by the 20th of Sep *468 tember, were still in an unfinished state, the 1st of December with its ■inclemency of weather was in the near future, and upon that condition of fact the parties agreed, as is shown by the correspondence, that for a failure to complete the buildings by the 10th and 12th of December a deduction of $50 a day was to be made from the compensation of the claimants. The agent of the defendants notified the claimants that on the 30th of November he would take possession of the work under the seventh clause of the contract, and to avert the result of such an exercise of power on the part of the defendants, the claimants agreed to deduct from their compensation $50 per day for each day the buildings remained unfinished after the 10th of December as to one of the buildings and after the 12th as to the other. It does not appear that in the payment by the defendants the claimants objected to such deduction, but acquiesced in it as the just right of the defendants.
The correspondence between the parties, applied condition of the work and the different extensions of time, clearly indicate that the purpose and intent of the parties were, that for any failure to complete within the time specified (which could have been avoided by claimants) a deduction of $50 per day was to be made as the just and fair compensation and satisfaction of the defendants.
The deduction under this contract differs in legal essence and effect from the deduction in contract B in this: Being in the form of liquidated damages equivalent to “the measure of injury or compensation,” as used by the Supreme Court in the the case of Van Buren v. Biggs (supra). Upon that item of the claim the petitioners have no right of recover.
The claim made by the petition, the substance appears in the findings, growing out of the use by the defendants of cement in the building of the Naval Observatory under a forfeited contract, can not be successfully maintained as a demand against the Government.
The sale by the claimants to the firm of P. Co. was made while they were in the prosecution of the work on the Naval Observatory, and, although on credit, the title fully passed to McLaughlin & Co. and became their property, which fully authorized the agents of the defendants to deal with it in pursuance of their right under the agreement with that firm.
The fact that the claimants gave the defendants notice and *469 demanded a return of the cement after a failure of the firm, did not create an equity iu the claimants which can be asserted and maintained against the defendants. The title having by the sale of claimants to McLaughlin & Co. passed to them so as to invest them with a complete property in the cement, no legal or equitable right of the claimants was violated by the defendants in taking possession of it and subordinating it to their rights under the contract with McLaughlin & Co. The title having passed from the seller to the buyer, third parties had a right to deal with the property relieved of an equity in the seller.
Upon the whole case we determine that the claimants are entitled to recover the sum of eight hundred and seventy dollars and twenty-eight cents ($870.28) as indicated in the conclusion of law.